1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

In re GABRIEL TECHNOLOGIES
CORPORATION, et al.,

Case No.  13-cv-03061-WHO

**ORDER GRANTING MOTION TO
DISMISS**

Re: Dkt. No. 3

On August 28, 2013, the Court heard argument on appellee's motion to dismiss this appeal
of an order of the Bankruptcy Court of the Northern District of California.  For the reasons
discussed below, the Court GRANTS the motion to dismiss this appeal.

## BACKGROUND

Appellant Qualcomm is a creditor of appellees, Gabriel Technologies Corporation and
Trace Technologies, LLC (collectively "debtors"), following the award of $12.4 million dollars in
attorney's fees and costs to Qualcomm in a lawsuit brought by the debtors alleging
misappropriation of intellectual property and patent infringement in the United States District
Court, Southern District of California.   *See* Exhibit A to Reply Br., May 27, 2013 Order of
Bankruptcy Court at 2.  The award of attorney's fees as well as the adverse judgment against the
debtors are on appeal to the Federal Circuit.  *Id*.

Appellees filed voluntary bankruptcy petitions under Chapter 11 on February 14, 2013.
*See* May 27, 2013 Order. The Bankruptcy Court granted the debtors' motion for joint
administration.  On April 3, 2013, Qualcomm Inc. filed a motion to convert the bankruptcy to
Chapter 7 or to appoint a Chapter 11 trustee under 11 U.S.C. section 1112.  *See* May 27, 2013
Order at 1.  On May 27, 2013, the Bankruptcy Court for the Northern District of California issued

its written decision denying Qualcomm's motion.  *Id.*  The Court noted that under section 1112, conversion must be "for cause" and that Qualcomm argued cause existed under section 1112(b)(4)(A), "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and section 1112(b)(4)(B), "gross mismanagement of the estate."  May 27, 2013 Order at 5.  The Bankruptcy Court found:

> Because the debtor has no tangible assets or realizable value and no operations, there has not been and is no "substantial" loss or diminution of the estate. Simply stated, there is nothing left to lose. The question then becomes whether accrual of fees of professionals employed by the Debtors and the Committee, and the possibility of additional Delaware state taxes, amount to the type of "continuing loss" that Congress had in mind to trigger the nearly mandatory conversion, dismissal or chapter 11 trustee options § 1112(b)(1) contemplates.

*Id.*  As to that question, the Court concluded:

> Perhaps from an accounting perspective (profit and loss), such accruals would constitute such losses. But the accrual of liabilities are not the same as the incurring of actual out-of-pocket losses, such as the dissipation of assets that diminishes the estate. Leaving the Debtors in possession of the chapter 11 estate is not risking some ever-diminishing pool of assets.

*Id.*, at 5-6.[1]  The Bankruptcy Court also noted that even if accrual of liabilities could constitute diminution of the estate, the Court was also required to determine how long that risk would exist. *Id.* at 6.  In light of the recent filing of the petitions and the filing of a Plan, "[t]he accrual of liabilities (losses) will end soon, either with a confirmed joint plan or conversion to chapter 7, a point conceded by Debtors' counsel to be inevitable if confirmation is denied. Thus, even if there is any continuing loss at all, it will not be continuing very long at all." *Id.* at 6.[2]

As to "gross mismanagement of the estate," the Court concluded that in absence of evidence that the managers of the debtors had actual conflicts or were actually mismanaging the

---

[1] At oral argument, counsel for the debtors stated that the bulk of the accrued fees are contingent upon debtors winning the Federal Circuit appeal.  Otherwise, since the estate has no assets, there will be no recovery for anyone.

[2] The Court also noted that because "§ 1112(b)(4)(A) uses the conjunctive (loss _and_ absence of likelihood of rehabilitation) the court does not need to deal with the thorny question of whether 'absence of a reasonable likelihood of rehabilitation' applies to debtors whose only hope is a successful appeal of an adverse litigation result and retrial, and has no going concern or business to rehabilitate." *Id.* (emphasis added).

2

1    estate, Qualcomm failed to demonstrate conversion was appropriate under section 1112(b)(4)(B).

2    *Id*. at 6-7.

3          On July 2, 2013, Qualcomm filed a notice of appeal from the May 27, 2013 Order.  Docket

4    No. 1.  The debtors have moved to dismiss that appeal, arguing that the May 27, 2013 Order is an

5    interlocutory order that is not final or otherwise appealable to this Court.  Qualcomm opposes that

6    motion and argues that even if it should have sought leave to file an appeal, that its notice of

7    appeal be treated as a request for leave to appeal.

8

9                                    **LEGAL STANDARD**

10          Under 28 U.S.C. section 158(a), the district courts have jurisdiction to hear appeals from

11   bankruptcy court of: (1) final judgments, orders, and decrees; (2) interlocutory orders and decrees

12   issued under section 1121(d) of title 11; and (3) with leave of the court, from other interlocutory

13   orders and decrees.  In the Ninth Circuit, in order to determine when a bankruptcy dispute is final

14   for appeal, courts apply the concept of "flexible finality," which focuses upon whether the order

15   affects substantive rights and finally determines a discrete issue.  *In re Belli*, 268 B.R. 851, 854

16   (B.A.P. 9th Cir. 2001).  Leave to appeal, under section 158(a)(3), is governed by standards set

17   forth in 28 U.S.C. section 1292(b), including whether the "order on appeal involves a controlling

18   question of law as to which there is a substantial ground for difference of opinion and whether an

19   immediate appeal may materially advance the ultimate termination of the litigation" and also

20   "whether denying leave will result in wasted litigation and expense."  *See In re Roderick Timber*

21   *Co.*, 185 B.R. 601, 604 (B.A.P. 9th Cir. 1995).

22

23                                      **DISCUSSION**

24          The question before the Court is whether the denial of a motion to convert under 11 U.S.C.

25   1112 is a final order subject to appeal as a right under 28 U.S.C. section 158(a)(1) or the type of

26   order that is appropriate for leave to appeal an interlocutory order under 28 U.S.C. section

27   158(a)(3).

28   **I.   APPEALABLE AS A FINAL ORDER**

United States District Court
Northern District of California

3

1     The debtors rely on *In re Fox*, 241 B.R. 224 (B.A.P. 10th Cir. 1999).  There, the panel held

2   that an order denying a motion to convert from Chapter 11 to Chapter 7 bankruptcy was not a final

3   order under section 158(a)(1).  The Court recognized that in bankruptcy proceedings "finality" is

4   determined pragmatically, "depending on the what kind of dispute the order resolves." *In re Fox*,

5   241 B.R. at 229.  The Court concluded that a denial of a motion to convert was not final because

6   the order "does not conclude the bankruptcy case; instead, it permits the case as a whole to

7   continue. Furthermore, the Order does not resolve a discrete dispute within the larger bankruptcy

8   case; it does not determine creditor priorities, nor does it resolve any issues regarding the Debtor's

9   assets." *Id*. at 230.

10    Qualcomm argues that the *Fox* court's analysis is at odds with the Ninth Circuit's focus on

11  "flexible finality."   Courts in the Ninth Circuit employ a "pragmatic approach" to finality in

12  bankruptcy that "emphasizes the need for immediate review." *Bonham v. Compton (In re*

13  *Bonham)*, 229 F.3d 750, 761 (9th Cir. 2000); *see also Rosson v. Fitzgerald (In re Rosson)*, 545

14  F.3d 764, 769 (9th Cir. 2008).  As such, a bankruptcy court order can be considered to be final and

15  appealable where it "'1) resolves and seriously affects substantive rights and 2) finally determines

16  the discrete issue to which it is addressed.'"  *In re Rosson*, 545 F.3d at 769 (quoting *In re Bonham*,

17  229 F.3d at 761).[3]

18    Qualcomm relies on *In re Rosson,* 545 F.3d 764 to argue that the Ninth Circuit has held

19  that an order converting a case in bankruptcy under another chapter to one under Chapter 7 is final

20  and appealable, "whether or _not_ the case will be converted."  Opp. Br. at 7 (emphasis in original).

21

22  _____

[3]   For its definition of "flexible finality," Qualcomm relies on *Dominguez v. Miller (In re*
23  *Dominguez)*, 51 F.3d 1502 (9th Cir. 1995).  Opp. Br. at 6.  However, *Dominguez* dealt with
    finality under section 158(d) to review a BAP decision to *remand* to Bankruptcy Court and
24  subsequent Ninth Circuit cases "significantly narrowed" the test in that circumstance "to ensure
    that we would not exercise jurisdiction when it would frustrate the important policies of promoting
25  judicial efficiency, respecting finality, and avoiding piecemeal litigation."  *Stanley v. Crossland,*
    *Crossland, Chambers, MacArthur & Lastreto (In re Lakeshore Village Resort)*, 81 F.3d 103, 107
26  (9th Cir. 1996).  The test applied in the Ninth Circuit, under section 158(d), "to determine whether
    a BAP's decision to remand a case to the bankruptcy court is 'final' under section 158(d): '(1) the
27  need to avoid piecemeal litigation; (2) judicial efficiency; (3) the systemic interest in preserving
    the bankruptcy court's role as the finder of fact; and (4) whether delaying review would cause
28  either party irreparable harm.'"  *Congrejo Invs, LLC v. Mann (In re Bender)*, 586 F.3d 1159, 1164
    (9th Cir. 2009) (quoting *In re Lakeshore Village Resort*, 81 F.3d at 107)).

1    However, the *In re Rosson* language relied on by Qualcomm goes only to whether or not a

2    "discrete legal issue" has been determined, which the Court agreed occurs "whether or not" a

3    motion to convert is granted. 545 F.3d at 770.  The *In re Rosson* Court then went onto explain that

4    because "a conversion to Chapter 7 takes control of the estate out of the hands of the debtor, it

5    seriously affects substantive rights and may lead to irreparable harm to the debtor if immediate

6    review is denied," the order at issue was final and appealable.  The Court noted that its holding

7    was specifically "limited to the finality of those conversion orders that convert a case *to* Chapter

8    7." 545 F. 3d 770 at n.6 (emphasis in original); *see also Nordin v. Galaba (In re Nordin),* 2013

9    Bankr. LEXIS 942 (B.A.P. 10th Cir. Mar. 12, 2013) ("An order denying conversion of a Chapter 7

10   case to a Chapter 13 case is a final order for purposes of appeal.")[4]; *Condon v. Brady (In re*

11   *Condon)*, 358 B.R. 317, 320 (B.A.P. 6th Cir. 2007) ("an order denying a debtor's request to

12   convert from chapter 7 to chapter 13 is a final order."); *Results Sys. Corp. v. MQVP, Inc.,* 395 B.R.

13   1 ( E.D. Mich. 2008) (allowing appeal of order converting case from Chapter 11 to Chapter 7).

14         The debtors argue that *In re Rosson* and the other cases finding orders *granting* motions to

15   convert *to* or *denying* motions to convert *from* Chapter 7 are distinguishable from this case

16   because Chapter 7 leads to liquidation which has an obvious, immediate and a potentially

17   irreparable effect on debtor and creditor rights.  *Cf. In re Rosson*, 545 F.3d at 770 ("because a

18   conversion to Chapter 7 takes control of the estate out of the hands of the debtor, it seriously

19   affects substantive rights and may lead to irreparable harm to the debtor if immediate review is

20   denied.").  An order which maintains or places a case in reorganization under Chapter 11 – like the

21   denial of a motion to convert from Chapter 11 to Chapter 7 at issue here – does not have an

22   immediate or irreparable impact on debtor or creditor rights and simply requires the creditor's

23   continued participation in the bankruptcy proceedings.  *See, e.g., Mason v. Young (In re Young)*,

24   237 F.3d 1168, 1173 (10th Cir. 2001) ("under Chapter 7, once the debtor's assets have been

25

26   _____

27   [4] Qualcomm contends that the conclusion in *In re Fox* was called into question by the decision in
     *In re Nordin,* 2013 Bankr. LEXIS 942 (B.A.P. 10th Cir. Mar. 12, 2013).  Opp. Br. at 11.
     However, the decision in *In re Nordin* to allow an appeal from an order denying a motion to
28   convert from Chapter 7 to Chapter 11 is fully consistent with *In re Fox*, as in both instances the
     debtors' and creditors' rights are immediately impacted by liquidation under Chapter 7.

United States District Court
Northern District of California

1  liquidated, it is virtually impossible to reassemble them, and therefore an order converting to

2  Chapter 7 is necessarily more final in nature than an order converting to Chapter 13.").

3      Qualcomm also relies on *Stuart v. Koch (In re Koch),* 109 F.3d 1285 (8th Cir. 1997),

4  which held that an order denying a motion to dismiss a Chapter 7 case for "substantial abuse" was

5  final for purposes of section 158(d).  In reaching that conclusion, the Court focused in particular

6  on that fact that "deferring appellate review of the substantial abuse question while Debtors

7  expend their inadequate resources in what turns out to be a futile Chapter 7 liquidation would

8  certainly prevent the aggrieved party – the trustee acting on behalf of creditors – from obtaining

9  effective relief.  Second, a later reversal would also force Debtors to recommence the entire

10 proceeding under Chapter 13 to receive bankruptcy protection." *Id.* at 1287.  Qualcomm agues

11 this case is indistinguishable, as allowing the debtors to continue in their Chapter 11 bankruptcy is

12 simply allowing them to continue to rack up debt – at least $800,000 in administrative expenses

13 through their proposed effective plan date as well as $15,000 a month in unpaid franchise taxes

14 owed to the state of Delaware – in what may be a futile Chapter 11 proceeding.[5]

15     The debtors do not address *In re Koch*, but rely instead on *In re 405 N. Bedford Dr. Corp.*,

16 778 F.2d 1374 (9th Cir. 1985), where the Ninth Circuit found that a motion to dismiss a Chapter

17 11 case on an allegation of bad faith was not immediately appealable.  Significant to the Court was

18 the fact "that beneficiaries are not threatened with the possibility of irreparable harm if they cannot

19 immediately appeal the district court's affirmance of the denial of their motion to dismiss.

20 Although the beneficiaries will have to continue their participation in the reorganization process,

21 their interests will be protected while they participate" by various provisions in the code.[6]

22

23 _____

[5]  Qualcomm also relies on *Fridley v. Forsythe (In re Fridley),* 380 B.R. 538 (B.A.P. 9th Cir.
24 2007) for the proposition that an order granting *or* denying a motion to convert is analytically
    indistinguishable from an order granting *or* denying a motion to dismiss "either of which are
25 unquestionably a final order in the Ninth Circuit."  Opp. Br. at 7.  However, while the Court in *In
    re Fridley* found that an order which operates as a "deferral but not a denial of discharge" was
26 final under principles of flexible or pragmatic finality, it *also* noted that "[t]o the extent the order
    may be interlocutory, we grant leave to appeal. 28 U.S.C. § 158(a)(3)."  *Id.* at 541.
27 [6]  Including the right to adequate protection (under 11 U.S.C. §§ 361, 363(e)), right to relief from
    automatic stay (under 11 U.S.C. § 362(d)), and protection for secured creditors when property is
28 sold (under 11 U.S.C. § 363(f)).  *In re 405 N. Bedford Dr. Corp.*, 778 F.2d at 1377.

The Court agrees that orders refusing to let debtors out of Chapter 7 or forcing debtors into Chapter 7 have an immediate and potentially irreparable injury that is distinct from the order at issue here, which simply maintains the status quo in Chapter 11.  While debtor's argue that the incurrence of administrative expenses in the bankruptcy causes them immediate and potentially irreparable harm – because of the diminution of the estate by incurring further debt, where the estate has admittedly no assets left except the right to pursue the appeal in the underlying litigation – that sort of harm could be alleged by many if not all creditors who seeks to force a debtor into Chapter 7 and out of Chapter 11.  The denial of a motion to convert from Chapter 11 to 7 does not "seriously affect" the "substantive rights" of Qualcomm at this stage.  *In re Rosson*, 545 F.3d at 769.

## II.  APPEALABLE AS INTERLOCUTORY

Qualcomm argues that even if not a final order appealable as a right under section 158(a)(1), Qualcomm's notice of appeal from Bankruptcy Court should be deemed a motion for leave to appeal an interlocutory order under Bankruptcy Rule 8003(c) and 28 U.S.C. section 158(a)(3).[7]  Leave under section 158(a)(3) is granted where the factors of 28 U.S.C. 1292(b) are met. Namely, where the underlying order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b); *see, e.g., Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.),* 218 B.R. 643, 652 (B.A.P. 1st Cir. 1998) (applying 28 U.S.C. § 1292(b) factors to 28 U.S.C. § 158(a)(3) determination). Qualcomm asserts that the issue of law involved here is "whether the 'substantial or continuing loss to or diminution of the estate' under § 1112(b)(4)(A) includes a situation where a debtor is required to incur *debt* to fund the administration of the estate, thereby diluting the potential returns

---

[7] Bankruptcy Rule 8003(c) provides that "[i]f a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the district court or bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed. The district court or the bankruptcy appellate panel may also deny leave to appeal but in so doing shall consider the notice of appeal as a motion for leave to appeal."

1   on recoveries from, *e.g.*, actions against third parties that otherwise would have gone to creditors."

2   Opp. Br. at 4, n.5 (emphasis in original).

3        As noted above, the Bankruptcy Court questioned whether incurring debt through the

4   administration of Chapter 11 proceedings by non-operating entities like the debtors could

5   constitute "substantial or continuing loss to or diminution" of the estate when there is no estate

6   left.  May 27, 2013 Order at 5.  The Court found that it could not.  *Id.*  However, the Court went

7   onto find that even if that sort of incurrence of debt could constitute sufficient loss or diminution,

8   that the duration of that loss will be short and the accrual of liabilities will "end soon," justifying a

9   denial of the motion to convert.  *Id.* at 6.

10       Therefore, the order below and the appeal to this Court do not turn on one controlling

11  question of law, but on a question of law combined with a determination of fact regarding the

12  duration of the "loss" alleged.   In these circumstances, the Court finds that leave to appeal an

13  otherwise interlocutory order is not warranted.

15                                **CONCLUSION**

16       For the foregoing reasons, the Court GRANTS appellees' motion to dismiss the appeal.

17  The Clerk shall close the file.

19       **IT IS SO ORDERED**.

20  Dated: August 30, 2013

        _____
22      WILLIAM H. ORRICK
        United States District Judge

United States District Court
Northern District of California

8